**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSE A. VIRGEN MAGDALENO, Individually and on Behalf of all Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:12-cv-02862 |
| PCM CONSTRUCTION SERVICES, LLC, MIGUEL GUERRA AND DAWNNA L. HOGAN-GUERRA | § § § § | JURY DEMANDED |
| Defendants. | § § | |

## PLAINTIFFS' MOTION TO COMPEL AND MOTION FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Jose A. Virgen Magdaleno, Individually and on Behalf of all Others

Similarly Situated ("Plaintiffs") file this Motion for the Court to impose sanctions on Defendants

under the Court's inherent power, and under Federal Rule of Civil Procedure 37 for willful and

intentional discovery abuse and for impeding the discovery process.  Plaintiffs respectfully show

the Court as follows:

### I. NATURE AND STAGE OF PROCEEDINGS

1.    Plaintiffs filed their First Amended Complaint on January 30, 2013, asserting that

Defendants PCM Construction Services LLC ("PCM"), Miguel Guerra, and Dawnna L.

Hogan-Guerra were Plaintiffs' employers under the Fair Labor Standards Act, 29 U.S.C.

§§ 201-219 (2012), and failed to properly pay Plaintiffs their earned overtime wages, in

violation of the Fair Labor Standards Act ("FLSA").  (Pls.' First Am. Compl., Doc. No. 15).

2.      On December 9, 2013, Defendants filed a Motion to Quash Plaintiffs' Notice of Intention to take the Oral Deposition of Defendant Miguel Guerra (Doc. No. 51), which the Court denied on January 2, 2014. (Doc. No. 61).   Guerra failed to appear for his noticed deposition.  *See,* Certificate of Non-Appearance, Ex. A.

3.      Subsequently, on December 20, 2013, Plaintiffs filed a Motion to Compel Discovery in response to Defendants' failure to adequately respond to Plaintiffs' propounded discovery requests. (Doc. No. 59).

4.      On January 29, 2014, Magistrate Judge Nancy K. Johnson conducted a hearing on Plaintiffs' Motion to Compel Discovery and ordered Defendants to produce documents responsive to discovery requests, and ordered Defendants to present Defendant Miguel Guerra and Defendant Dawnna Hogan-Guerra for deposition.

5.      On February 6, 2014, Defendants filed a Motion for Continuance (Doc. 70) of their depositions, which were noticed for February 7, 2014.  Defendants failed to appear for their noticed depositions.  *See* Certificates of Non-Appearance, Ex. B.

6.      Plaintiffs re-noticed the depositions and Defendants filed an Amended Motion for Continuance on March 3, 2014, once again on the eve of the noticed depositions.  (Doc. No. 77). The Motion was denied on March 4, 2014.  (Doc. No. 79), and Guerra failed to appear for the third time.  *See,* Certificate of Non-Appearance, Ex. C.

7.     Finally, after the fourth notice, Guerra appeared for his deposition on March 7, 2014. Though he appeared, Guerra again failed to cooperate in discovery in accordance with the Federal Rules of Civil Procedure, forcing Plaintiffs to seek this Court's intervention.

## II. FACTUAL BACKGROUND

8.     Since the hearing on Plaintiffs' Motion to Compel, Defendants have failed to provide any supplemental answers to Plaintiffs' Interrogatory Nos. 13 and 14, in which Plaintiffs requested as follows:

> *Interrogatory No. 13:* Describe the position(s) held by Miguel Guerra with PCM Construction Services, LLC and provide any job description(s) for that/those position(s); describe all activities Mr. Guerra performed for and on behalf of PCM; describe his regular work schedule; describe the legal and financial relationship between him and PCM; list Mr. Guerra's annual compensation from PCM during the years 2009, 2010, 2011, 2012 and 2013; and describe and identify interactions and communications between Miguel Guerra and each Plaintiff.

> *Interrogatory No. 14:* Describe the position(s) held by Dawnna Hogan Guerra with PCM Construction Services, LLC and provide any job description(s) for that/those position(s); describe all activities Ms. Guerra performed for and on behalf of PCM; describe her regular work schedule; describe the legal and financial relationship between her and PCM; list Ms. Guerra's annual compensation from PCM during the years 2009, 2010, 2011, 2012 and 2013; and describe and identify interactions and communications between Dawnna Hogan Guerra and each Plaintiff.

9.     Defendants have also failed to provide documents responsive to Plaintiffs' Request for Production No. 27, in which Plaintiffs requested "True and correct copies of documents concerning Defendant's net worth, including but not limited to, audited financial statements, federal and state income tax returns, and bank and brokerage account statements for the past three years."

10.    In addition to failing to appear for three noticed depositions, Defendant Miguel Guerra refused to meaningfully participate in his fourth-noticed deposition on March 7, 2014.

11.   During the March 6, 2014 deposition of Defendant Dawnna Hogan-Guerra, Plaintiffs' counsel was forced to seek the Court's intervention after Defendants' counsel repeatedly instructed Hogan-Guerra not to answer any questions related to her personal and business finances.  Magistrate Judge Johnson ordered Hogan-Guerra to answer the questions and further ordered that the same ruling would "apply to the deposition of Miguel Guerra, to be taken on March 7, 2014." (Doc.80-1).

12.   During the course of Mr. Guerra's deposition, however, he was purposefully evasive, took inordinately long, drawn-out pauses for even the simplest of questions, and repeatedly insisted he did not know any details about his own business and personal finances, or what his own tax records reflected.  For example:

> Q.   Does someone in your household keep track of how much is paid annually in property taxes?
>
> A.  I don't know.
>
> Q.  Would your IRS records reflect that?
>
> A.  I don't know.
>
> Q.  Would your annual tax filings that you submit to the IRS include that information?
>
> A.  Don't know.
>
> Q.  Who would know?
>
> A.  Don't know.
>
> Q.  Have you ever signed a tax return?  I'm sorry.  Have you ever signed any documents that were submitted on your behalf to the IRS?
>
> A.  I sign a lot of documents so --
>
> Q.  So, you don't know?

A.  I don't know.

Q.  Do you pay taxes?

A.  Do I pay taxes?

Q.  Strike that last question.  Do you pay taxes each year to the IRS?

A.  I don't know.

Guerra Dep. Ex. D, at 58:4-24.

13.     Later, when further probed about signing tax documents, Guerra apparently remembered

that he *had* signed tax records, but feigned an inability to recall any other details.

Q. (By Mr. Kennard) Have you ever – have you ever signed a document that was intended to be filed with the Internal Revenue Service of the United States of America?

A.  Yes.

Q.  When?

A.  Don't remember.

Q.  When was the last time?

A.  I just answered you, don't remember.

Q.  Did you sign one in 2014?

A.  Answer's still the same, don't remember.

Q.   What about in 2013 did you -- I don't need you to tell me when.  I'm just asking if you did. Did you or did you not sign a document that was intended to be filed with the Internal Revenue Service of the United States of America in 2013?

A.  I don't know.

Q.  What about in 2012?

A.  I don't know.

Q.  What about in 2011?

A.  I don't remember.

Q.  What about in 2010?

A.  Don't remember.

Q.  What about in 2009?

A.  Don't remember.

Q.  But you have signed something?

A.  I sign a lot of documents.

Q.  Do you understand that when you sign a document that is intended to be filed with the IRS that you have affirmed and sworn to the accuracy of the information contained in the documents that are presented to the IRS?  Do you understand that?

A.  Yes.

Q.  So, how is it that you have no idea anything about your taxes for the last five years?

A.  Because that's what the tax attorney do, he do them and I sign documents.

Q.  So, the tax attorney can tell us how much you paid in taxes in the last five years?

A.   That would be a attorney/customer confidentiality, but I will say that he may have that knowledge.

Q.  Do you have records of your tax filings?

A.  I don't.

Q.  Who does?

A.  I don't know.

Q.  Does the tax attorney have them?

A.  He may.

Q.  Do you keep records for yourself?

A.  I don't.

Q.  Where do you keep important documents for yourself?

A.  What kind of documents?

Q.  Any documents that you deem to be important.

A.  I don't have any documents that I have in a safe somewhere.

Q.   Do you think it's a good business practice to not keep important documents for your own personal records?

A.  Probably not.

Q.  How much money did you make last year in 2013?

A.  Don't know.

Q.  You don't know how much money you made in 2013?

A.  No.

Q.  How much money have you made this year?

A.  Don't know.

Q.  How much did you personally make in February of 2014?

A.  Don't know.

Q.  How about in January of 2014?

A.  Don't have those numbers on me.  Don't know.

Q.  Are you paid a salary from PCM for being a member manager?

A.  No.

Q.  How does PCM, LLC, compensate you, Miguel Guerra, for being a member manager of the company?

A.  How?

Q.  Yes.

A.  With money.

Q.  How much money?

A.  Don't know.

Q.  Do you have any idea how much money PCM has paid you in the last five years for being a member manager?

A.  No idea.

Q.  How about in 2014, do you have any idea how much money PCM has paid you for being a member manager?

A.  No.

Q.  How about in 2013?

A.  No.

Q.  Where would that information be contained?

> A.  I don't know.
>
> Q.  Aren't you one of only two member managers?
>
> A.  Right.
>
> Q.  So, you don't know.  Who would know?
>
> A.  We don't get a salary as a member manager.

Guerra Dep. Ex. D, at 71:1-74:18.

14.  Guerra's deposition was filled with similar testimony, in which Guerra feigned lack of knowledge about his business and personal finances, among other, very basic questions. *See*, Guerra Dep. Ex. D.  After nearly three hours of evasive and incomplete answers, Guerra went so far as to tell Plaintiffs' counsel to call Guerra's tax attorney for the information requested, then claimed an inability to contact the tax attorney.

> Q.  Is there a way for you to find out quickly?  Do you need to make a phone call?  We can take a break and you can go call if you need to refresh your memory.  Is that something you can do?
>
> A.  I don't know who I'd call.
>
> Q.  You just told me you could call your tax attorney.
>
> A.  I said you could.  I didn't say I could.
>
> Q.  Can you -- okay.  Can you call your tax attorney to see if you can get the information of how much PCM Construction did in gross revenues in 2013?
>
> A.  No.
>
> Q.  Why not?  You just don't want to?
>
> A.  Don't have his number.
>
> Q.  Can you find his number?
>
> A.  I don't know.
>
> Q.  Does somebody that you know have his number that you can reach out to today?
>
> A.  I don't know.
>
> Q.  I can't continue forward without this information.  So, I'm going to need some records.

MR. KENNARD:  And, Mr. Cuellar, we requested these records; and we never got them.  I -- and if he's refusing to tell me or he's claiming to not know and I've
given him the opportunity today to go ahead and try and get that information for us and he's refusing to and saying that he has no way of getting it, even despite the fact that he is one of two member managers, i.e., owners of this company, which I find incredibly hard to believe, I can't continue forward any further.

Q.  (By Mr. Kennard) So, I'm going to ask the witness one more time:  Can you today get the information on the gross revenues for PCM Construction, LLC?

A.  I don't know.

Q.  Can you get it, yes or no?

A.  No.

Guerra Dep. Ex. D, at 79:1-80:11.

### III. ARGUMENT AND AUTHORITIES

*A.  Defendants' Discovery Misconduct Should be Sanctioned*

15.    Though Magistrate Judge Johnson ordered Defendants to produce responses and documents related to Plaintiffs' discovery requests, Defendants have failed to provide complete and timely responses, and have violated this Court's order regarding same.

16.     Further, Defendant Guerra failed to heed Judge Johnson's ruling ordering him to answer questions related to his personal and business finances.  Any answer that was provided in his deposition was done in attempt to obfuscate the response.

17.    The Court has the inherent power to protect the integrity of the judicial system and punish those who abuse it by imposing sanctions.  *See, Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).  The Court also has authority under Rule 37 of the Federal Rules of Civil Procedure to sanction a party for discovery misconduct in particular.   A Court has considerable discretion to impose sanctions under Rule 37.  *McLeod, Alexander, Powel & Apffel, PC,* 894 F.2d 1482 (5th Cir.), *cert. denied,* 488 U.S. 855 (1988).

18.   Defendants' failure to comply with discovery orders is misconduct subject to sanctions under Rule 37(b).   Further, making evasive or incomplete disclosures in response to document requests or interrogatories, or in answering deposition questions is also considered discovery misconduct.   FED. R. CIV. P. 37(b).   This behavior is "treated as a failure to disclose, answer, or respond."   FED. R. CIV. P. 37(a)(4).   Rule 37(d) permits sanctions for this conduct.   Sanctions are also appropriate when a party fails to attend his own deposition after receiving notice.   FED. R. CIV. P. 37(d).

19.   Rule 37(b) discovery sanctions are "designed to discourage delay, waste of resources, and dilatory practices." *Morris v. United States*, 37 Fed.Cl. 207, 212–13 (1997); *see also Thornton–Trump v. United States*, 12 Cl.Ct. 127, 132 (1987) ("The purpose of sanctions is not only to compensate innocent parties for the discovery abuses of opponents. Its primary function is to deter the offending party—and, by that example, all other litigants—from violating the rules in the future.").   Rule 37 sanctions are appropriate where a party displays willfulness, bad faith, *or* fault in violating his discovery obligations.   *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640 (1976).

20.   Here, Defendants' serial withholding of discovery-related documents and information occurs so frequently it must be deliberate.   Despite a hearing on discovery deficiencies and an order obligating Defendants to provide relevant discovery documents, Defendants have ignored the Court's order and continue to withhold responses and documents pursuant to Plaintiffs' Interrogatory Nos. 13 and 14, and Request for Production No. 27. Second, Miguel Guerra's repeated failure to appear for his noticed deposition, and his

evasion of questions during his deposition, are further examples of Defendants' misconduct and desire not to cooperate in good faith with this proceeding and the discovery process.  Defendants' engaged in discovery misconduct, and will continue to engage in discovery misconduct if appropriate sanctions are not imposed.

21.     Discovery misconduct may be sanctioned in any "just" manner, including the various sanctions listed in Rule 37(b)(2)(A).  Additionally, an award of attorneys' fees and expenses incurred as a result of the misconduct must be made unless the conduct "was substantially justified or other circumstances make an award of expenses unjust."  *See* FED. R. CIV. P. 37(b)(2)(C) and 37(d)(3).

22.     As a result of Defendants' misconduct, Plaintiffs seek the reasonable expenses and attorneys' fees caused by their misconduct, as outlined under Rule 37(b)(2)(C) and 37(d)(3), along with each of the sanctions under Rule 37(b)(2)(A)(i)-(vii) that the Court deems appropriate.

23.     To date Plaintiffs have incurred $1,229.65 in expenses as a result of Defendant Guerra's failure to appear for his noticed depositions, and in the costs associated with his latest failed deposition.  *See,* Dep. Invoices, Ex. E.  Plaintiffs have also spent 49.50 hours in attorney time preparing their motion to compel discovery, responding to two motions for continuance and a motion to quash, preparing the instant motion for sanctions, and in preparing and participating in each failed deposition.  Accordingly, Plaintiffs request $18,562.50 in attorney's fees.

B.    *Defendants' should be Compelled to cure Discovery Deficiencies*

24.    Although Counsel for Defendants indicated that they would supplement discovery responses, after having ample time to do so, they have failed to provide amended or supplementary responses.  Plaintiffs once again move to compel Defendants' discovery responses.

25.    Defendants were ordered to cure their discovery response defects as a result of Plaintiffs' Motion to Compel. (Doc. 59).  Plaintiffs re-urge the arguments set forth in their Motion to Compel and request that Defendants obey the Court's previous order.  Additionally Plaintiffs request that the Court compel Defendant Guerra to participate in good-faith at a second deposition.

   *C.  Extension of Deadlines*

26.    The current deadline for supplemental briefing on Defendants' Motion for Summary Judgment is March 28, 2014.  (Doc. 76).  Defendants' unwillingness to cooperate fully in Plaintiffs' discovery requests has inhibited Plaintiffs ability to properly prepare their supplement response to Defendants' Motion for Summary Judgment.  For these reasons, Plaintiffs seek an extension this deadline as follows: Supplemental Briefing Deadline will be 3 weeks after the re-deposition of Miguel Guerra.


## IV. CONCLUSION AND PRAYER

As outlined above, Defendants' conduct is a continued act in their series of attempts to delay and avoid responding to the reasonable discovery requests that the Plaintiffs are entitled. Their reasons for disobeying a Court order are unfounded, without basis in law, and meant for the process of delay and harassment.  Wherefore, premises considered, Plaintiffs request that this

Court compel Defendants to respond to pending discovery requests, compel Defendant Guerra to participate in good-faith at a second deposition, and impose on Defendants, sanctions in the amount of $19792.15, and grant Plaintiffs all such other relief to which they may be entitled under Rule 37 or under the Court's inherent power.  Plaintiffs' further request that the Court extend the deadline to supplement briefing to Defendants' Motion for Summary Judgment.

Respectfully submitted,



/s/ Alfonso Kennard Jr.
Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District Bar No: 713316
5433 Westheimer Road, Suite 825
Houston, Texas 77056
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
alfonso.kennard@kennardlaw.com
ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL FOR PLAINTIFF:



Amanda C. Hernandez
Texas Bar No. 24064411
Southern District No. 1531045
amanda.hernandez@kennardlaw.com

Lakshmi Ramakrishnan
Texas Bar No.: 24037324
Southern District Bar No.: 33872
5433 Westheimer Road, Suite 825
Houston, Texas 77056
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
lakshmi.ram@kennardlaw.com


## CERTIFICATE OF CONFERENCE


I certify that conferred with Defendants' counsel regarding the Motion and that counsel was opposed to the Motion.


*/s/ Alfonso Kennard Jr.*
Alfonso Kennard Jr.


## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served on counsel for Defendant via the District Court's ECF system on March 19, 2014.


*/s/ Amanda C. Hernandez*
Amanda C. Hernandez