IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE A. VIRGEN MAGDALENO, Individually and on Behalf of all Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-2862 |
| PCM CONSTRUCTION SERVICES, LLC, MIGUEL GUERRA, and DAWNNA L. HOGAN-GUERRA, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants' Motion to Compel Arbitration and Stay Lawsuit Pending Arbitration (Doc. 50) and Defendants' Motion for Summary Judgment (Doc. 54). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that both motions be **DENIED**.

## I.  Case Background

On September 26, 2012, Plaintiff Jose A. Virgen Magdaleno ("Magdaleno") filed this case against Defendant PCM Construction Services, LLC, ("PCM") as an opt-in collective action under the Fair Labor Standards Act[2] ("FLSA") to recover unpaid overtime

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 65.

[2]     29 U.S.C. §§ 201-219.

wages.[3]  Plaintiff Magdaleno worked as a driver for Defendant PCM, a company in the business of removing construction debris.[4]

Defendant PCM timely answered the lawsuit on October 22, 2012, raising five affirmative defenses but not mentioning any applicable arbitration provision.[5]  In December 2012, three individuals filed consents to join the action.[6]

On January 14, 2013, the parties' attorneys conferred via telephone to develop a joint discovery/case management plan as required by Federal Rule of Civil Procedure ("Rule") 26.[7]  In their report, the parties informed the court of a related case that was then pending in the United States District Court for the Northern District Texas, and Defendant PCM intimated that it possibly would seek transfer and/or consolidation with that case.[8]  In response to Plaintiff's representation that he would seek conditional certification so that notice could be sent to current and former similarly situated employees, Defendant PCM requested bifurcated discovery, first, related to the named plaintiff and, second, related to all additional plaintiffs.[9]

---

[3]      See Doc. 1, Compl.

[4]      Id. p. 2 (unnumbered).

[5]      See Doc. 4, Def. PCM's Answer.

[6]      See Docs., 6-8, Consents.

[7]      See Doc. 10, Jt. Disc./Case Mgmt. Plan.

[8]      Id. pp. 1-2.

[9]      Id. p. 2.

Defendant PCM indicated that it intended to make initial disclosures by February 8, 2013, and to participate in all phases of discovery, including serving interrogatories and taking depositions.[10]   The parties agreed that they were "willing to discuss settling this matter out of court and would agree to consider mediation after engaging in initial discovery."[11]   The parties stated that they believed mediation could be suitable after sufficient discovery had been undertaken.[12]   Plaintiff Magdaleno explained that he had contacted Defendant PCM regarding a resolution prior to filing suit but that Defendant PCM was "not interested or prepared to negotiate a settlement at that time."[13] Defendant PCM did not mention any arbitration agreement in Plaintiff Magdaleno or any potential plaintiff's employment documentation.[14]

On January 23, 2013, Defendant PCM filed a certificate of interested parties, naming Miguel Guerra ("Guerra") and Dawnna L. Hogan-Guerra ("Hogan-Guerra") as interested parties.[15]   The court held a scheduling conference on January 25, 2013, and the court set

---

[10]   Id. pp. 2-4.

[11]   Id. p. 4.

[12]   Id.

[13]   Id.

[14]   See Doc. 10, Jt. Disc./Case Mgmt. Plan.

[15]   See Doc. 12, Def. PCM's Certificate of Interested Parties p. 1.

3

pretrial dates.[16]   The court set the deadline for dispositive motions as "thirty days after mediator declares an impasse" and scheduled docket call for November 8, 2013.[17]   Neither the Minute Entry Order nor the Docket Control Order suggests that Defendant PCM notified the court of an applicable arbitration agreement.[18]

Within a week of the scheduling conference, Plaintiff Magdaleno amended his complaint to add Defendants Guerra and Hogan-Guerra.[19]   On March 1, 2013, Plaintiff Magdaleno filed a motion for conditional certification.[20]   Defendant PCM did not respond to the motion, and the other two defendants had not been served by the date on which the motion was ripe for consideration.   Defendants Guerra and Hogan-Guerra were served on April 19, 2013, rendering their answers due by May 10, 2013.[21]

Having received no response from any defendant to Plaintiff Magdaleno's motion for conditional certification, the court entered an order granting the motion on August 6, 2013.[22]   The court ordered Defendants to "provide Plaintiffs' counsel with the names and addresses of all individuals employed by Defendants during the

---

[16]   See Doc. 13, Min. Entry Order; Doc. 14, Docket Control Order.

[17]   Doc. 14, Docket Control Order.

[18]   See Doc. 13, Min. Entry Order; Doc. 14, Docket Control Order.

[19]   See Doc. 15, Pls.' 1st Am. Compl.

[20]   See Doc. 16, Pls.' Mot. for Conditional Certification.

[21]   See Docs. 17-18, Returns of Serv.

[22]   See Doc. 20, Order Dated Aug. 6, 2013.

three-year period before this lawsuit was filed" and to post the notice and notice of consent at all business locations.[23]  Potential plaintiffs were given forty-five days from the date on which the first notices were mailed to file consents with the court.[24]

Two weeks later, the parties filed an agreed motion to extend the deadlines in the docket control order by sixty days, citing their settlement discussions and potential interest in mediation.[25] The court granted the motion on the same day it was filed.[26]  From August 30, 2013, to October 18, 2013, twenty-four individuals filed consents to join the collective action, bringing the total number of plaintiffs to twenty-eight.[27]

The parties filed a second agreed motion to extend the deadlines in the docket control order, this time, based on the parties' continued settlement discussions after having attended mediation.[28]  The court granted their request to postpone the deadlines by thirty days to allow more time for negotiation.[29] Under the new docket control order, the discovery deadline was

---

[23]     Id. pp. 1-2.

[24]     See id. p. 2.

[25]     See Doc. 21, Agreed Mot. to Extend Scheduling/Docket Control Order pp. 1, 2.

[26]     See Doc. 22, Order Dated Aug. 20, 2013.

[27]     See Docs. 23-46, Consents.

[28]     See Doc. 48, 2nd Agreed Mot. to Extend Scheduling/Docket Control Order p. 1.

[29]     See Doc. 49, Order Dated Dec. 2, 2013.

December 19, 2013, and docket call was scheduled for February 14, 2014.[30]

On December 4, 2013, Defendants filed the pending motion to compel arbitration, arguing for the first time that each of the plaintiffs had entered into a written agreement that included a mandatory arbitration provision.[31]   In their brief, Defendants represented  that the "case ha[d] not been set for trial" despite the court having already set a date for docket call.[32]

On December 9, 2013, Defendants filed a motion to quash Plaintiffs' notice of intention to take Defendant Guerra's deposition, arguing that it would be an undue burden on him and that the notice should be stayed until the court ruled on Defendants' Motion to Compel Arbitration.[33]   The following day, almost eight months after they were served and seven months late, Defendants Guerra and Hogan-Guerra filed answers.[34]   Neither defendant mentioned the purported arbitration agreements in his/her answer.[35]

On the same day, Defendants filed a four-page motion for

---

[30]    See id.

[31]    See Doc. 50, Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb.

[32]    Id. p. 3.

[33]    Doc. 51, Defs.' Mot. to Quash Dep. of Def. Guerra pp. 2-3.

[34]    See Docs. 17-18, Returns of Serv.; Docs. 52-53, Answers.

[35]    See Docs. 52-53, Answers.

summary judgment, attaching no evidence but arguing that Plaintiffs
had failed to provide any evidence supporting their cause of action
against the individual defendants.[36]  The court granted two agreed
motions for extensions of time for Plaintiffs to respond to
Defendants' pending dispositive motions.[37]

On December 30, 2013, Plaintiffs responded to Defendants'
Motion to Quash Deposition of Defendant Guerra, and, a few days
later, the court denied the motion.[38]  In January 2014, several
other docket events occurred:  Plaintiffs responded to the motions
to compel arbitration and for summary judgment; Defendants replied
to Plaintiffs' response to the motion to compel arbitration; the
court referred this case to the undersigned; and the undersigned
held a hearing on the motion to compel discovery and to extend
deadlines, granting the motion in part.[39]

Defendants Guerra and Hogan-Guerra filed a motion for
continuance of their depositions due to Defendant Guerra's travel

---

[36]    See Doc. 54, Defs.' Mot. for Summ. J.

[37]    See Doc. 55, Agreed Mot. for Extension of Time to Respond to Defs.'
Mot. for Summ. J.; Doc. 56, Agreed Mot. for Extension of Time to Respond to
Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb.; Doc. 57, Order Dated Dec.
19, 2013 Granting Doc. 55; Doc. 58, Order Dated Dec. 19, 2013 Granting Doc. 56.

[38]    See Doc. 60, Pls.' Resp. to Mot. to Quash Def. Guerra's Dep.; Doc.
61, Order Dated Jan. 2, 2014.

[39]    See Doc. 62, Pls.' Resp. in Opposition to Mot. to Compel Arb. & Stay
Lawsuit Pending Arb.; Doc. 63, Defs.' Reply to Pls.' Resp. in Opposition to Mot.
to Compel Arb. & Stay Lawsuit Pending Arb.; Doc. 64, Pls.' Resp. in Opposition
to Defs.' Mot. for Summ. J.; Doc. 65, Order Dated Jan. 13, 2014; Doc. 66, Notice
of Setting Dated Jan. 21, 2014; Doc. 67, Min. Entry Dated Jan. 29, 2014; Doc. 68,
Oral Order Dated Jan. 29, 2014.

plans and Defendant Hogan-Guerra's childcare responsibilities.[40]
Plaintiffs responded.[41]  Before this court could hold a hearing on
the motion, Defendants filed a petition for a writ of mandamus with
the Fifth Circuit, which immediately stayed all further proceedings
in this court, including discovery.[42]  On February 11, 2014, the
Fifth Circuit denied Defendants' petition for writ of mandamus and
dissolved its order staying the proceedings.[43]

On February 12, 2014, Defendants objected to the court's oral
discovery order that partially granted Plaintiffs' Motion to Compel
Discovery and Motion to Extend Dispositive Motions Deadline.[44]  They
objected to the court's docket management, contending that the
court erred in failing to promptly conduct a hearing on Defendants'
Motion to Compel Arbitration and in deferring consideration of that
motion until Defendants complied with discovery requests and made
Defendants Guerra and Hogan-Guerra available for deposition.[45]
Those objections remains pending.

On February 19, 2014, the court granted Defendants' motion for

---

[40]     See Doc. 70, Defs.' Mot. for Continuance of Defs. Guerra & Hogan-Guerra's Deps.

[41]     See Doc. 71, Pls.' Resp. in Opposition to Mot. for Continuance of Defs. Guerra & Hogan-Guerra's Deps.

[42]     See Doc. 75, 5th Cir. Order Dated Feb. 7, 2014.

[43]     See Doc. 84, 5th Cir. Order Dated Feb. 11, 2014.

[44]     See Doc. 74, Defs.' Objections to Magis. Judge's Order Dated Jan. 29, 2014.

[45]     See id. pp. 2-5.

continuance of Defendants Guerra and Hogan-Guerra's depositions.[46]
On March 3, 2014, Defendants Guerra and Hogan-Guerra filed an
amended motion for continuance of their depositions based on
childcare issues, to which Plaintiffs responded.[47]  The court denied
the motion.[48]

During Defendant Hogan-Guerra's deposition, Plaintiffs
requested the court's intervention because the deponent was
instructed by counsel not to answer questions regarding her
personal and business finances.[49]  The court ordered Defendant
Hogan-Guerra to answer the financial questions related to the
period 2009 to the present and applied the same ruling to financial
questions posed to Defendant Guerra in his deposition the following
day.[50]

On March 19, 2014, Plaintiffs moved the court to compel
certain supplemental answers to interrogatories and the production
of certain documents and to sanction Defendants for their failure
to provide that information and for their improper conduct related
to Defendant Guerra's deposition.[51]  On March 28, 2014, Plaintiffs

---

[46]    See Doc. 76, Min. Entry Order Dated Feb. 19, 2014.

[47]    See Doc. 77, Defs.' Am. Mot. for Continuance of Defs. Guerra & Hogan-Guerra's Deps.; Doc. 78, Pls.' Resp. in Opposition to Am. Mot. for Continuance of Defs. Guerra & Hogan-Guerra's Deps.

[48]    See Doc. 79, Order Dated Mar. 4, 2014.

[49]    See Doc. 80-1, Min. Entry Order Dated Mar. 6, 2014.

[50]    See id.

[51]    See Doc. 81, Pls.' Mot. to Compel & Mot. for Sanctions.

filed a supplemental response to Defendants' summary judgment motion, highlighting testimony from Defendant Hogan-Guerra's deposition.[52]

On April 3, 2014, Defendants responded to the motion to compel that Plaintiffs had filed on March 19, 2014, and the court held a hearing on April 4, 2014.[53] The court granted Plaintiffs' motion.[54] Also on April 3, 2014, Defendants filed untimely objections to the court's rulings on the scope of Defendants Guerra and Hogan-Guerra's depositions.[55] The district judge overruled Defendants' objections on April 4, 2014.[56]

The court first addresses Defendants' motion to compel and then turns to their motion for summary judgment.

## II.  Motion to Compel Arbitration

Defendants seek an order from the court compelling arbitration of all of Plaintiffs' claims pursuant to a provisions in the Agreements to the Terms and Conditions of Employment ("Agreement") that were purportedly signed by all of the plaintiffs in this

---

[52]    See Doc. 86, Pls.' Supplemental Resp. in Opposition to Defs.' Mot. for Summ. J.  Although Defendants have not yet replied to the supplemental response, the court has given it consideration and will review any reply filed by Defendants in connection with their objections to this Memorandum and Recommendation.

[53]    See Doc. 88, Defs.' Resp. in Opposition to Pls.' Mot. to Compel Disc. Resps. & Mot. for Sanctions; Doc. 89, Min. Entry Order Dated Apr. 4, 2014.

[54]    See Doc. 89, Min. Entry Order Dated Apr. 4, 2014.

[55]    See Doc. 87, Defs.' Objections to Magis. Judge's Order Dated Mar. 6, 2014.

[56]    See Doc. 90, Order Dated Apr. 4, 2014.

lawsuit. Defendants attached to their motion unauthenticated copies of the English and Spanish versions of the Agreement and unauthenticated signature pages signed by twenty-one of the twenty-eight plaintiffs.[57] The English version of the Agreement states that employment is mutually at will and that the agreement does not create an employment contract.[58] It includes a provision with the heading "Arbitration of Disputes," which states in bold:

> EMPLOYEE AGREES TO SUBMIT ANY DISPUTE BETWEEN EMPLOYEE AND THE COMPANY, OR ANY OF THE COMPANY'S EMPLOYEES, REPRESENTATIVES OR AGENTS, TO MANDATORY, BINDING ARBITRATION. This provision applies to all claims brought by Employee except for those related to any action pending against Company on November 1, 2011. The arbitration will be held exclusively pursuant to the provisions of the Federal Arbitration Act ("FAA"). For Employees who work primarily in Texas, the arbitration shall be in Bexar County, Texas; for all other Employees, the arbitration shall be conducted in Raleigh, North Carolina. The arbitration shall be presided over by a single arbitrator under the Employment rules of the American Arbitration Association applicable to such dispute[](s) then in effect. Each party to the arbitration shall equally bear the expenses of the arbitration, and the decision of the arbitrator as to any matter submitted to arbitration shall be final, conclusive, binding upon and enforceable by all parties to the arbitration. The duty to arbitrate disputes shall survive the termination of Employee's employment with the Company and this Agreement. Any claim subject to arbitration must be brought in the claimant's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. The parties agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise

---

[57]     See Doc. 50-1, Ex. A to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., English Version of Agreement; Docs. 50-2 to 50-22, Exs. B–V to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Signature Pages.

[58]     Doc. 50-1, Ex. A to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., English Version of Agreement p. 1.

preside over any form of a representative or class proceeding.[59]

Plaintiffs move to strike Defendants' motion on the basis that Defendants failed to confer with Plaintiffs prior to filing the motion and failed to include a certificate of conference as required under the Local Rules of the U.S. District Court for the Southern District of Texas ("Local Rules"). Plaintiffs also contend that Defendants did not provide evidence that all of the plaintiffs had agreed to arbitration. In addition to these procedural defects, Plaintiffs argue that the cited arbitration agreement is invalid and/or unenforceable, and that Defendants waived the right to compel arbitration.

After setting out the legal standard generally applicable to motions to compel arbitration, the court addresses Plaintiffs' arguments directed at procedural flaws in Defendants' motion. The court then moves to the issues of validity and waiver. Finding other reasons for denial of Defendant's motion, the court does not address Plaintiffs' contention that the arbitration provision is unconscionable.

## A. **Arbitration Standard**

The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract

---

[59]   <u>Id.</u> p. 4.

. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

A party to a written agreement for arbitration may petition an appropriate federal district court for an order compelling arbitration.  9 U.S.C. § 4.  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  In order to determine whether to compel arbitration, courts perform a two-prong inquiry: (1) whether the parties agreed to arbitrate; and (2) whether a federal statute or policy overrides the parties' agreement to arbitrate.  <u>Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.</u>, 588 F.3d 884, 886 (5th Cir. 2009).

## B.  **Procedural Defects**

Local Rule 7.1D requires that a movant confer with the other party and include an averment that counsel cannot agree about the disposition of an opposed motion.  The court may strike any motion that does not conform to local or federal rules.  LR 11.4.

Defendants' counsel notified Plaintiffs' counsel via email at 3:19 p.m. on December 4, 2013, that Defendant PCM had requested that its counsel "move forward with filing for arbitration pursuant

to th[e] [A]greements."[60]   The email did not seek the agreement of Plaintiffs' counsel on the disposition of the motion.[61]   Less that two hours later, Defendants filed the motion to compel arbitration and did not include a certificate of conference.[62]

Based on the failure to comply with Local Rules, the court has the authority to strike Defendants' motion to compel arbitration. See LR 11.4.   In this case, the court finds that striking the motion would serve no purpose other than to delay consideration of the motion's merits.   As it stands now, Plaintiffs filed an opposition, and Defendants filed a reply.   Thus, the court finds that the motion, which has been pending for several months is ripe for consideration on the merits.

As to the seven plaintiffs with regard to whom Defendants failed to submit any evidence of arbitration agreements, Defendants have not met their burden of demonstrating that those employees agreed to arbitrate.[63]   Cf. Dealer Computer Servs., Inc., 588 F.3d at 886 (requiring that an agreement to arbitrate exists).   The

---

[60]      Doc. 62-1, Ex. A to Pls.' Resp. in Opposition to Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Email from Todd A. Prins to Alfonso Kennard, et al., Dated Dec. 4, 2013.

[61]      See id.

[62]      See Doc. 50, Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb.

[63]      Plaintiffs also point out that, in order for the arbitration agreement to be enforceable, the evidence must show that it was provided to the employees and they accepted its terms. Cf. In re Halliburton, 80 S.W.3d 566, 568 (Tex. 2002)(discussing Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986), and stating that an employee must have notice of changes to an at-will employment contract and must have accepted the changes for them to be effective).

court must deny Defendants' motion to compel arbitration of the claims asserted by Marvin A. Castillo Martinez, Oscar Delgado Ortega, Nicolas Flores Manzano, Narciso Sanchez, Carlyle Tippins, Oscar Hernandez Acosta, and Jose de Jesus Ayala.[64]

In addition to the above-mentioned procedural flaws, the exhibits to Defendants' motion are not authenticated. They submitted English and Spanish versions of the Agreement, along with only the signature pages signed by twenty-one of the plaintiffs. What Defendants did not include was sworn testimony that the documents to which those signature pages belong contained identical arbitration provisions to the representative English and Spanish versions of the Agreement.

The pagination of the Spanish-language signature pages matches that of the corresponding version of the Agreement.[65]   The pagination of the three English signature pages, however, differs from the representative English version of the Agreement.[66]   This inconsistency highlights the importance of the authentication of documents.  Without authentication, the court finds these exhibits

---

[64]     Compare Docs. 23, 26, 28, 29, 38, 39, 44 with Docs. 50-2 to 50-22, Exs. B-V to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Signature Pages.

[65]     Compare Doc. 50-1, Ex. A to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Spanish Version of Agreement to the Terms & Conditions of Emp't with Docs. 50-2, 50-4 to 50-7, 50-9 to 50-18, 50-20 to 50-22, Exs. B, D-G, I-R, T-V to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Signature Pages.

[66]     Compare Doc. 50-1, Ex. A to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., English Version of Agreement to the Terms & Conditions of Emp't with Docs. 50-3, 50-8, 50-19, Exs. C, H, S to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Signature Pages.

to be unreliable evidence.  Nevertheless, as Plaintiffs have not challenged the authenticity of these documents or the content of the documents to which the signature pages belong, the court assumes that Defendants could provide authentication if required to do so.  The court does not find this flaw to be a reason to delay consideration.

## C. **Validity**

The first prong of the inquiry whether to compel arbitration asks whether the parties agreed to arbitrate as determined by the answers to two questions: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute falls within [the scope of] that agreement." Dealer Computer Servs., Inc., 588 F.3d at 886.  The court may determine challenges with respect to: (1) the existence, as opposed to the validity, of the contract containing the arbitration provision, and (2) the validity of the arbitration provision itself. See Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214, 218-19 (5th Cir. 2003).

The determination of whether the arbitration agreement is contractually valid is decided according to state law. Lizalde v. Vista Quality Mkts., ___ F.3d ___, No. 13-50015, 2014 WL 1226730, at *2 (Mar. 25, 2014).  "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir.

16

2004)(citing <u>Will-Drill Res., Inc.</u>, 352 F.3d at 214).

Like any contract, an arbitration agreement must be supported by consideration. <u>Lizalde</u>, 2014 WL 1226730, at *2 (quoting <u>Mendivil v. Zanios Foods, Inc.</u>, 357 S.W.3d 827, 831 (Tex. App.—El Paso 2012)). Continued employment pursuant to an at-will relationship is not sufficient consideration for the formation of an arbitration agreement. <u>J.M. Davidson, Inc. v. Webster</u>, 128 S.W.3d 223, 228 (Tex. 2003)(discussing <u>In re Halliburton Co.</u>, 80 S.W.3d 566, 568-70 (Tex. 2002)). An illusory promise also is not consideration and will not support the formation of a contract. <u>Lizalde</u>, 2014 WL 1226730, at *2.

Courts have determined that "the mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." <u>Id.</u> (quoting <u>In re 24R, Inc.</u>, 324 S.W.3d 564, 566 (Tex. 2010)(internal quotation marks omitted). On the other hand, the "unrestrained unilateral authority" to terminate an arbitration agreement is merely an illusory promise. <u>Id.</u> The authority to terminate the arbitration agreement is not illusory if it extends to prospective claims only, applies equally to both the employer and employees' claims, and requires advance notice to the employee before termination is effective. <u>Id.</u> (citing <u>In re Halliburton Co.</u>, 80 S.W.3d at 569-70).

The arbitration provision at issue in this case is part of an agreement that explicitly defines the employment relationship as

at-will.[67]  Despite the Agreement's assertion that employment with the company served as consideration for the employee's agreement to all of the terms and conditions therein, more is needed to support the arbitration provision.  See id.; J.M. Davidson, Inc., 128 S.W.3d at 228.  The arbitration provision here is not mutually binding; it explicitly binds only the employees to the promise that they will submit disputes to arbitration and specifically "applies to all claims brought by [e]mployee[s]" only.[68]  Thus, the arbitration provision is not mutually binding and fails for lack of consideration.

Moreover, the Agreement allows the company, at its "sole discretion, to change, revise or eliminate any of its policies as described [t]herein, except for the provision for Employment At-Will."[69]  This amendment provision would allow Defendant PCM to change or terminate the arbitration provision at Defendant PCM's sole discretion, thus giving it unrestrained unilateral authority. Neither the amendment provision nor the arbitration provision contains the limitations of prospective claims, equal application, and advance notice.

The arbitration provision in the Agreement is based on nothing more than illusory promises, which renders it invalid.  Defendants'

---

[67]     Doc. 50-1, Ex. A to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., English Version of Agreement to the Terms & Conditions of Emp't p. 1.

[68]     See id. p. 4.

[69]     Id.

motion should be denied on this basis.  Despite having sufficient reason for denying Defendants' motion, the court addresses one more basis for denial.

**D.  <u>Waiver</u>**

Like any contract right, the right to arbitration can be waived.  <u>Nicholas v. KBR, Inc.</u>, 565 F.3d 904, 907 (5th Cir. 2009)(citing <u>Miller Brewing Co. v. Fort Worth Distrib. Co.</u>, 781 F.2d 494, 497 (5th Cir. 1986)).  Waiver of arbitration occurs when a party seeking arbitration invokes the judicial process to such a substantial degree that compelling arbitration would work to the detriment or prejudice of the other party.  <u>Republic Ins. Co. v. PAICO Receivables, LLC</u>, 383 F.3d 341, 344 (5th Cir. 2004)(quoting <u>Subway Equip. Leasing Corp. v. Forte</u>, 169 F.3d 324, 326 (5th Cir. 1999)).  Whether a party's litigation conduct constitutes a waiver of its right to enforce the arbitration provision is a issue of law to be decided by the court and must be decided on a case-by-case basis.  <u>Id.</u> at 346.  The analysis involves two parts: invoking the judicial process and prejudicing the other party.  <u>See</u> <u>id.</u>

Invoking the judicial process requires, at a minimum, some overt act in court that demonstrates the party's interest in resolving the arbitrable dispute through litigation, not arbitration.  <u>Id.</u> at 344.  The Fifth Circuit "do[es] not look kindly upon parties who use federal courts to advance their causes and then seek to finish their suits in the alternate fora that they

could have proceeded to immediately [because] [s]uch actions waste the time of both the courts and the opposing parties." <u>Walker v. J.C. Bradford & Co.</u>, 938 F.2d 575, 577 (5th Cir. 1991).

In the present case, Defendant PCM[70] answered the lawsuit, participated in a joint discovery/case management conference, requested bifurcated discovery, filed a certificate of interested parties, participated in the court's scheduling conference, provided Plaintiffs with the names and addresses of all potential plaintiffs so that notices could be sent, joined Plaintiffs in agreed motions to extend deadlines on two occasions, participated in mediation, and answered discovery propounded by Plaintiffs — all before asserting a right to arbitration. In fact, Defendant PCM waited until within two weeks of the close of discovery. During the entire time that this lawsuit had been pending, Defendant PCM's actions indicated an interest in resolving this case through litigation.

After filing the motion to compel arbitration, Defendant PCM joined a motion to quash Plaintiffs' notice of intention to take Defendant Guerra's deposition, joined a motion for summary judgment

---

[70]    Although Defendants Guerra and Hogan-Guerra joined Defendant PCM in filing the motion to compel, it does not appear that they were parties to the Agreement.  The Agreement does not mention Defendants Guerra and Hogan-Guerra, referring only to Defendant PCM.  The only signatories to the Agreements are the employees themselves, and the signature pages do not even include a place for a representative of Defendant PCM to sign.  <u>See</u> Docs. 50-2 to 50-22, Exs. B-V to Defs.' Mot. to Compel Arb. & Stay Lawsuit Pending Arb., Signature Pages.  Because Defendants Guerra and Hogan-Guerra failed to demonstrate that they were parties to the Agreements or otherwise entitled to seek a motion to compel arbitration, the court focuses only on whether Defendant PCM waived its purported right to arbitration.

on the issue of Defendants Guerra and Hogan-Guerra's status as employers, participated in discovery hearings, filed a writ of mandamus with the Fifth Circuit, objected to discovery orders of the undersigned to the district judge, and joined motions for continuance of Defendants Guerra and Hogan-Guerra's depositions.

Defendant PCM's litigation activity was not as extensive as the movant's activity in certain other cases where the Fifth Circuit determined that the movant waived arbitration. See, e.g., Republic, 383 F.3d at 345 (finding that movant waived where it answered counterclaims, conducted discovery, amended its complaint, and filed two motions to compel discovery, a dispositive motion, and a motion in limine). Nevertheless, this court finds Defendant PCM's actions invoked the judicial process on the merits and did not allow the court to limit judicial proceedings to the initial issue of whether a valid arbitration agreement existed. The court, therefore, proceeds to the second part of the waiver analysis.

As defined by the Fifth Circuit, "prejudice" in this context refers to "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." Petro. Pipe Americas Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 480 (5th Cir. 2009)(quoting Republic Ins. Co., 383 F.3d at 346). The Republic Ins. Co. court set out three factors that are routinely employed to decide whether the party

opposing arbitration was prejudiced: (1) whether discovery related to the arbitrable claims occurred; (2) whether time and expense was incurred in defending against a motion for summary judgment; and (3) whether the party seeking to compel arbitration failed to timely assert its right to arbitration.  Republic Ins. Co., 383 F.3d at 346.

In the present case, there can be no debate regarding the third factor.  Plaintiff Magdaleno filed his original complaint in September 2012.  Defendant PCM was served the following month.  The motion to compel was filed in December 2013, raising the purported right to arbitration for the very first time.  Defendant PCM participated in this lawsuit for fifteen months before even mentioning arbitration.  By failing to demand arbitration while engaging "in pretrial activity inconsistent with an intent to arbitrate," Defendant PCM has lessened the burden on Plaintiffs to "show that [their] position has been compromised, i.e., prejudiced." Republic Ins. Co., 383 F.3d at 347 (quoting Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1161 (5th Cir. 1986)).

Regarding the first factor, Plaintiffs sought discovery related the merits of the case.  As far as the court can tell, Defendant PCM did not propound discovery on Plaintiffs.  However, Defendant PCM initially indicated that it intended to fully participate in the discovery process and agreed to a discovery plan.  Then, Defendant PCM resisted compliance with Plaintiffs'

discovery requests, precipitating court intervention. Defendant PCM participated in mediation and settlement discussions and, jointly with Plaintiffs, moved for extensions of the discovery deadline to accommodate these efforts. Ultimately, Defendant PCM filed the motion to compel arbitration fifteen days before the close of discovery and just over two months before docket call was scheduled.[71]

Although Defendant PCM did not file a dispositive motion prior to asserting a right to arbitration, Defendant PCM's conduct cost Plaintiffs even more time and expense than a response to summary judgment would have cost them. Defendant PCM did not respond to Plaintiffs' motion to conditionally certify, which, under the Local Rules, is a representation of no opposition. See LR 7.4. The court's granting of Plaintiffs' motion initiated the process of notifying potential class members and collecting opt-in consents, a time-consuming and expensive process. By urging that the court must compel Plaintiffs to arbitrate on an individual basis after allowing the opt-in process to proceed without objection, Defendant PCM impermissibly is seeking a second bite at the apple. Other actions taken by Defendant PCM inflated the expense to Plaintiffs and wasted their time, such actions as engaging in mediation,

---

[71] Defendants stated in their motion that the case was not set for trial. At the time, it was indeed set for docket call in February 2014 for a March 2014 trial date.

settlement discussions, and obstreperous discovery tactics.[72]

The court concludes that, even if Plaintiffs were subject to a valid arbitration agreement, which they were not, Defendant PCM has waived its right by invoking the judicial process to the detriment and prejudice of Plaintiffs.[73]   Defendants' motion to compel arbitration should be denied.

### III. Motion for Summary Judgment

Defendants move for summary judgment in their favor on the claims against Defendants Guerra and Hogan-Guerra.   Defendants argue that Plaintiffs fail to provide any evidence that the two individual defendants qualified as employers of Plaintiffs. Defendants cite no law related to the FLSA.   Instead, they base the

---

[72]   Defendants claim that they participated in litigation only to the extent that they sought to avoid it and protect the right to arbitration. Certainly, that was not true for the fifteen months prior to their filing the motion to compel.   If it was true for that time, the only explanation is that Defendants intentionally misled Plaintiffs and the court.   Whether Defendant PCM intentionally or inadvertently delayed filing a motion to compel arbitration is presumably known only to its principals and counsel.   Either way, though, Defendants have wasted the time and resources of Plaintiffs and the court.

[73]   The court is aware of the decision by the U.S. District Court for the Northern District of Texas in which that court compelled arbitration of a related case.   See Pacheco v. PCM Constr. Servs., LLC, Civil Action No. 3:12-CV-4057-L, 2014 WL 145147, at *1 (N.D. Tex. Jan. 15, 2014)(slip copy).   In that case, the court did not address whether the arbitration agreement was invalid for lack of consideration but found that the defendants had not waived their right to arbitration.   See id.   Regarding the latter issue, the court stated that Plaintiffs' opposition was based solely on the contention that the defendants were not diligent in pursuing arbitration.   Id. at *6.   There, the defendants filed, other than the motion to compel, an answer and three motions to dismiss on the issue of whether the individual defendants qualified as employers under the FLSA.   Id. at *7.   The court found that the defendants' actions were "purely defensive in nature."   Id.   The court also found the plaintiffs' contention that they had been prejudiced was stated in "conclusory fashion" and concluded that "any prejudice allegedly suffered by [the] [p]laintiffs [was] insufficient."   Id. at **6, 8.   This court finds that the actions of Defendant PCM were more extensive in this case and finds that Plaintiffs were prejudiced.

motion on their status as members in a limited liability company and cite the Texas Business Organizations Code. They contend that, under Texas law, they are not liable for the debts, obligations, or liabilities of Defendant PCM and may not be named as a party in an action against Defendant PCM "unless the action is brought to enforce the member's right against or liability to the company."[74]

The court first sets out the standard for analyzing summary judgment motions and then addresses the parties' arguments.

**A.   <u>Summary Judgment Standard</u>**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial. <u>Celotex Corp.</u>, 477 U.S. at 324.

---

[74]   Doc. 54, Defs.' Mot. for Summ. J. p. 3.

B.  **Discussion**

Defendants fail to meet either their factual or legal burden. Addressing the latter first, the court notes that the legal issue is whether Defendants Guerra and Hogan-Guerra are employers subject to liability under the FLSA.  Defendants Guerra and Hogan-Guerra's potential liability as members in a limited liability company under the Texas Business Organizations Code is irrelevant.  Because Defendants base their motion on inapplicable law, failing even to mention the FLSA, their motion should be denied.  Nevertheless, employing the proper law, the court also addresses Defendants' no-evidence assertion.

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows an employee to bring an action against his employer for violation of the FLSA's hour and wage provisions. See 29 U.S.C. §§ 215-216.  "Employer" is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

> The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship.  The test originates in the Supreme Court's holding that economic reality should govern the determination of employer status under the FLSA.  To determine whether an individual or entity is an employer, the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. In cases where there may be more than one employer, this

court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.

Gray v. Powers, 673 F.3d 352, 354-55 (5th Cir. 2012)(citations and internal quotation marks omitted); see also Chapman v. A.S.U.I. Healthcare & Dev. Ctr., No. 13-20081, 2014 WL 351868, at *2 (5th Cir. Feb. 3, 2014)(unpublished)(applying the Gray factors).

Defendants cite no evidence and, therefore, do not meet their initial burden of pointing to summary judgment evidence demonstrating that no dispute exists.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323; Topalian, 954 F.2d at 1131. Plaintiffs, however, cite to ample summary judgment evidence in support of each of the Gray factors to raise a fact issue on whether Defendants Guerra and Hogan-Guerra were Plaintiffs' employers.

Defendants Guerra and Hogan-Guerra co-founded Defendant PCM in 1998.[75] Defendant Guerra was one of the individuals responsible for determining whether to hire or fire Plaintiffs, what Plaintiffs' work schedules would be, and how much to pay Plaintiffs.[76] Supervisors in the company reported directly to Defendant Guerra.[77]

---

[75]    Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. p. 63.

[76]    Doc. 64-2, Ex. B to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Defs.' Answers to Pls.' Req. for Interrogs. No. 4; see also Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. 84 (stating that Defendant Guerra determined the employees' salaries).

[77]    See Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. pp. 102-03, 106.

27

He held a managerial position and made decisions for the company, such as when to buy new vehicles.[78]  He was one of the individuals with knowledge of Defendant PCM's pay and record-keeping policies.[79] Defendant Guerra implemented the company policies and assisted in creating company forms, including applications and time sheets.[80]

> Plaintiff Magdaleno recalled:
>
> Mr. Guerra would occasionally stop by the work site.  On or around the first week that I was working, I was injured on the job.  I told Mr. Guerra about the injury and let him know that I would need to go to the clinic. He replied that he would not be paying for any clinic bills, and also warned me that he would find a replacement employee if I was not able to do the work.[81]

Defendant Guerra gave Plaintiff Magdaleno instructions regarding how to complete the work, conducted a safety meeting for all of the Houston employees that Plaintiff Magdaleno attended, and, at that meeting, required Plaintiffs to sign new employment agreements.[82] According to Plaintiff Magdaleno, his supervisor was instructed by Defendant Guerra to deduct the cost of repairing the work vehicle

---

[78]    Id. p. 98; Doc. 64-4, Ex. D to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Defs.' Answers to Pls.' Req. for Interrogs. No. 13.

[79]    Doc. 64-3, Ex. C to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Defs.' Answers to Pls.' Req. for Interrogs. No. 9.

[80]    See Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. pp. 79, 130-32.

[81]    Doc. 64-5, Ex. E to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Pl. Magdaleno's Decl. ¶ 6.

[82]    Id. ¶¶ 7, 8; see also Doc. 64-6, Ex. F to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Pl. Mandujano's Decl. ¶ 10 (stating that he attended a safety meeting conducted by Defendant Guerra).

that Plaintiff Magdaleno drove from his paycheck.[83]

Plaintiff Mandujano added that he observed Defendant Guerra on the work sites once a month, reviewing the employees' work, checking whether it was satisfactory, and giving instructions if changes were in order.[84]   Plaintiff Mandujano also observed Defendant Guerra providing the supervisors with instructions and orders and overheard Defendant Guerra direct a supervisor to lay off employees due to a decrease in business.[85]   A supervisor told Plaintiff Mandujano to contact Defendant Guerra directly when Plaintiff Mandujano received a paycheck that he believed was not in the proper amount.[86]

Defendant Hogan-Guerra jointly made decisions with Defendant Guerra regarding hiring and firing.[87]   She was a manager whose primary responsibilities were to pay Defendant PCM's employees and accounts payable and to file required forms with the State of Texas.[88]   She paid employees based on the number of hours worked as

---

[83]   See Doc. 64-5, Ex. E to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Pl. Magdaleno's Decl. ¶ 11.

[84]   Doc. 64-6, Ex. F to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Pl. Mandujano's Decl. ¶ 8.

[85]   Id.

[86]   Id. ¶ 9.

[87]   See Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. pp. 72-73, 85, 86, 104-06.

[88]   See id. pp. 65-67, 69; Doc. 64-4, Ex. D to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Defs.' Answers to Pls.' Req. for Interrogs. No. 14.

reported to her by Defendant Guerra.[89]  Supervisors reported salary offers directly to Defendant Hogan-Guerra.[90]

She was one of two individuals, along with Defendant Guerra, who had knowledge of Defendant PCM's pay and record-keeping policies.[91]  One of the decisions related to Defendant PCM's employees in which Defendant Hogan-Guerra participated involved paying the employees according to a fluctuating workweek method in an effort to control overtime.[92]  When the Department of Labor conducted an investigation into Defendant PCM, Defendants Guerra and Hogan-Guerra were directly involved and adjusted the method of paying employees as a result.[93]  Defendant Hogan-Guerra also maintained employee records.[94]

The court finds that this evidence is more than enough to overcome Defendants' no-evidence assertion.  Defendants' motion should be denied.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants'

---

[89]    Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. p. 109.

[90]    See id. p. 82.

[91]    Doc. 64-3, Ex. C to Pls.' Resp. in Opposition to Defs.' Mot. for Summ. J., Defs.' Answers to Pls.' Req. for Interrogs. No. 9.

[92]    See Doc. 86-1, Ex. A to Pls.' Supplemental Resp. to Defs.' Mot. for Summ. J., Def. Hogan-Guerra's Dep. pp. 156-59.

[93]    See id. pp. 148-50, 153-55.

[94]    See id. pp. 80-81.

Motion to Compel Arbitration and Stay Lawsuit Pending Arbitration and Defendants' Motion for Summary Judgment both be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 8th day of April, 2014.

Nancy K. Johnson
United States Magistrate Judge